# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE
### July 15, 2014 Session

## STATE OF TENNESSEE v. BRADLEY DOUGLAS PARKER

### Appeal from the Circuit Court for Hickman County
### No. 125119CR    Timothy L. Easter, Judge

---

### No. M2013-02620-CCA-R3-CD - Filed February 10, 2015

---

Defendant, Bradley Douglas Parker, was indicted by the Hickman County Grand Jury for one count of aggravated child abuse, a Class A felony, and one count of aggravated child neglect, also a Class A felony. Both charges involved the same incident and victim. Subsequently, the State announced that it was unable to prove serious bodily injury of the victim and moved the trial court to dismiss the count of aggravated child abuse and to amend the count charging aggravated child neglect to charge the Class D felony offense of child neglect of a child less than eight years of age. Immediately, Defendant pled guilty to the Class D felony offense of child neglect. The parties agreed Defendant would be sentenced as a Range I standard offender, with the length and manner of service of the sentence to be determined by the trial court following a sentencing hearing. The trial court imposed a sentence of three years to be served by split confinement comprised of thirty days' incarceration in the county jail followed by three years' probation. Defendant appeals, arguing that the trial court should have granted judicial diversion or in the alternative imposed a three-year sentence totally suspended to be served on probation. After a thorough review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

THOMAS T. WOODALL, P.J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, Bradley Douglas Parker.

Herbert H. Slatery, III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Kim R. Helper, District Attorney General; and Kate Yeager, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

**Facts**

*Guilty Plea*

At the guilty plea hearing the State summarized the facts in support of Defendant's guilt of the Class D felony offense of child neglect as follows:

> Had this case proceeded to trial, the State would have shown that on or about February 4th or 5th of 2012, the victim, [    ], date of birth, [13 months old] was in the custody of his father [Defendant] for his visitation that weekend.

> That Sunday morning, the 5th, the father [Defendant] took the child over to the mother's home and encountered the mother's boyfriend and her mother. And they discovered some burns on the child's face and on his chest area. They then determined the child needed to go to the hospital, took him there.

> And various testimony from doctors and medical personnel would tell the Court that the burns were first-degree and second-degree on his face and chest, that they were chemical in nature. And that the father, [Defendant] whose custody the child was in, had no explanation that made medical sense as to what happened.

> [Defendant] was interviewed on February 6th by Detective Smith, and Cynthia Primm from DCS, and he was not able to offer any explanation as to the burns on the child's face. He did state that he was constantly with his son and that his girlfriend, who was there that weekend did not have access to him without [Defendant] being present.

> The State would submit that this occurred here in Hickman County. Injuries were caused to the child by the neglect by [Defendant]. And [Defendant] was the person who is the child's biological father and who allowed these things to happen other than by an accidental means.

*Sentencing Hearing - State's Proof*

At the sentencing hearing Bobby Chance testified that he is engaged to the victim's mother. Brenda Edwards is the victim's maternal grandmother. On the Sunday morning in question, Defendant brought the victim to Brenda Edwards and to Mr. Chance, who were at the home of Kelsie Edwards, the victim's mother. Kelsie Edwards was at her job at Wal-Mart in Dickson. Mr. Chance observed blistering on the victim's face, and it appeared that skin was peeling off the victim's face. Defendant told Mr. Chance that he found that the victim had vomited when Defendant awoke the victim that Sunday morning. When the vomit was cleaned off, Defendant noticed the blistering. Defendant stated that his girlfriend had bathed the victim, and in the process the victim touched a rag that may have had chemicals on it. Mr. Chance also testified that Defendant claimed that part of a Sonic hamburger eaten by the victim on Saturday night might have caused the blistering. Mr. Chance elaborated that Defendant said, "something about the acid in it could have made the skin peel off his face."

Cynthia Primm, a Child Protective Investigator with the Tennessee Department of Children's Services, testified that she went to Horizon Medical Center in Dickson when the victim was being treated there. She talked with hospital staff members, the victim's mother, and Defendant. Defendant told Ms. Primm that when he awoke the victim on Sunday morning, the victim had vomit on his face, and when Defendant wiped off the vomit he saw the victim's skin "blistering off." In an interview a few days later Defendant told Ms. Primm that on Saturday the victim had grabbed a cleaning rag which had some cleaning chemical on it. Ms. Primm added that Defendant became aggravated at the hospital when she wrote up a protective plan for the child because Defendant was under investigation in the incident.

After examination at Horizon Medical Center, the victim was transported to Vanderbilt Medical Center in Nashville. Dr. Kyle Brothers examined the victim at Vanderbilt. He testified that the victim had second degree burns on both sides of his face with the overlying skin peeling off or already removed. Dr. Brothers was also concerned about a bruise behind the victim's ear. Dr. Brothers observed petechiae (burst capillaries) down the chest and back of the victim. He testified that the petechiae would have been caused by physical trauma. In Dr. Brother's opinion, the victim's skin injuries were not the result of a scalding burn, such as would be caused by boiling water. Dr. Brothers opined that the peeling skin was the result of a chemical burn.

Vicky Edwards, the victim's step-grandmother, testified that Defendant stated at Horizon Medical Center that the stomach acid in the victim's vomit was what probably caused injuries to the victim. She also noted that Defendant was not excited and was simply standing around with his hands in his pants pockets.

Kelsie Edwards, the victim's mother, had never been married to Defendant, who is the victim's father. Kelsie Edwards stated that Defendant exercised visitation with the victim

on alternating weekends. She repeated the substance of most of the prior witnesses' testimony concerning the victim's condition when she first saw him at Horizon Medical Center. The incident occurred on Sunday, February 5, 2012. She testified that the victim had recovered physically and was doing very well at the time of the sentencing hearing.

*Sentencing Hearing - Defendant's Proof*

Kelsie Edwards was also called as a witness during Defendant's proof. She acknowledged that a little over eight months after the incident she signed a petition which states:

> This is to verify that I, the undersigned have listed beside my signature the approximate number of years I have known [Defendant]. [Defendant] has never been in trouble with the law and is a very kind and compassionate person that represents the exact opposite of the charges placed against him. It is my opinion that these charges are not warranted. My signature below is a plea on behalf of [Defendant] that these charges be exonerated. These charges could ruin the life of a truthful and honest young man.

During cross-examination by the State, Kelsie Edwards claimed "I don't think I knew what it meant." She clarified that she did not believe that criminal charges should not have been brought against Defendant. However, she admitted that at the time of the sentencing hearing, she and Defendant had a civil relationship with each other.

Defendant's grandfather, Ken Pruitt, testified that Defendant was a hard worker both in the landscaping and construction business owned by Defendant's father and any other work he was able to find. Doug Parker, Defendant's father, testified that Defendant had worked at his business dating back before Defendant's graduation from high school. Doug Parker assured the trial court that Defendant would continue to be employed if Defendant was granted probation.

Defendant, twenty-four years old at the time of the sentencing hearing, testified that he had lived his entire life in Hickman County. At the time of the sentencing hearing, Defendant resided in a house owned by his grandfather, which Defendant was remodeling. He graduated from Hickman County High School. Defendant described his work experience working for his father's business: trimming shrubs, cleaning out flower beds, pouring concrete for a driveway, re-mulching landscape at a business, and doing small home remodeling projects. Defendant said that he generally worked thirty-five to thirty-eight hours per week. Defendant also listed other employers where he had worked in the past, including a temporary help agency.

Defendant stated that he had filed income tax returns over the past years but admitted that his father paid him in cash, his father did not withhold taxes, and Defendant did not receive W-2 forms from his father's business even though he did pay income taxes in 2011 and 2012. Defendant testified that he hoped to get training to become certified as a mechanic. Defendant stated that his physical and mental health were good. He planned to continue to work, he exercised supervised visitation with the victim, and he paid child support, both current and toward an arrearage.

In testimony concerning the victim's injuries, Defendant accepted responsibility for what happened even though Defendant stated that he still was not sure what exactly caused the injuries. Defendant described in detail his activities with the victim from the time Defendant picked him up for weekend visitation on Friday until he noticed vomit on the victim's face on Sunday morning when he got the victim out of the bed. When he wiped off the vomit, he saw the blistering on the victim's face. Defendant stated that he and his girlfriend gave the victim and the girlfriend's one-year-old child a bath in the kitchen sink on Saturday night. In his direct testimony Defendant explained the incident when the victim handled a cleaning rag during the bath:

> Q.     Tell the Court about how that washrag fits into - -
>
> A.     It was one that was laying on the counter.
>
> Q.     By the sink?
>
> A.     By the sink. And while we were giving [the victim] a bath, I had him at the time, he grabbed this rag. I didn't know what was on it. And all I could figure was, you know, it was some bleach on it from where we wiped down the counters. So I grabbed it away from him. I made sure to wash his hands. He tried putting it to his mouth, but he never did.
>
> Q.     Okay. And you let the police have that, and they sent it off to be tested?
>
> A.     Yes.

Defendant testified that after he saw the blisters, he immediately took the victim upstairs where he was living to see the landlord, who was also a nurse. The nurse told Defendant to take the child to the emergency room. Defendant drove the victim directly to

-5-

Kelsie Edwards' home. Kelsie Edwards was at work so the victim's grandmother and Mr. Chance rode with Defendant to the emergency room at Horizon Medical Center in Dickson. Defendant stated that he did not intentionally hurt the victim, and that he was very sorry for what had happened to the victim.

In closing argument the State strongly asserted that judicial diversion for Defendant was not appropriate. The State also urged the trial court to impose a sentence of four years, served by split confinement comprised of one year in the county jail followed by four years of probation. Defendant's counsel did not request a specific sentence length, but instead stated he would leave this up to the trial court without a recommendation. However, Defendant argued in the favor of judicial diversion, or in the alternative, full probation.

The trial court announced its sentencing decision in open court following a recess. The trial court first addressed the issue of whether judicial diversion was appropriate. As to Defendant's amenability to correction, the trial court found this factor to be "neutral." The trial court specifically found that Defendant's past indicated he was amendable to correction, but that his inconsistent explanations on the day of the incident as to what happened and his failure to explain later what caused the injuries raised questions in the trial court's mind as to Defendant's credibility.

As to the circumstances of the offense, the trial court concluded that this factor weighed heavily against judicial diversion. The trial court referenced photographs taken of the victim at the hospital which showed the second and first degree burns resulted in this criminal offense being "a very serious matter" involving serious injuries.

The trial court determined that Defendant's "record is devoid of any criminal history" and that weighed in favor of judicial diversion. The trial court found as favorable to Defendant that he had graduated from high school and had been "giving a lot to the community." However, the trial court found that Defendant was compensated for his work for his father by payments in cash without paying his appropriate taxes, and thus Defendant's "social history" weighed against granting judicial diversion because "he has been earning his living in a rather questionable way."

The trial court found that the record indicated that Defendant's physical and mental health should be weighed in favor of granting judicial diversion. The trial court concluded that because the offense was committed upon a defenseless and vulnerable victim, a child thirteen months old, that specific and general deterrence weighed against granting judicial diversion.

The trial court found that Defendant's attitude "seems to be one of remorse and appropriateness," and that Defendant "comes from a good family." The trial court stated he was not sure about Defendant's current home environment, but there was no evidence of drug usage or of emotional instability. Also, the trial court found that Defendant's general reputation was good.

The court found that although Defendant was paying his current child support, he was also paying on an arrearage, which indicated that at one time Defendant failed to face family responsibilities. In conclusion as to judicial diversion, the trial court stated:

> His attitude of law enforcement seems to be fine. Having reviewed all of those, and, again, going back to the circumstances of the offense, the Court finds that this is just not the appropriate case for the granting of judicial diversion. And that request is denied.

As to the length of the sentence, the trial court found that two statutory enhancement factors were applicable: (a) the victim was particularly vulnerable because of his young age, T.C.A. §. 40-35-114(4); and (b) Defendant abused a position of private trust, T.C.A. § 40-35-114(14). The trial court found that one mitigating factor applied, that being Defendant had no prior criminal record. *See* T.C.A. § 40-35-113(13). The trial court imposed a sentence length of three years.

As to whether some form of probation should be imposed, the trial court found that because of Defendant's lack of a history of criminal conduct, this was favorable to Defendant for a sentence involving something other than confinement. However, the trial court reiterated its prior finding that Defendant had committed an offense so serious that this weighed heavily against punishment with no confinement.

Finally, the trial court made an implicit factual finding that the victim's mother had known the exact meaning of the petition she had signed in support of leniency for Defendant. The trial court quoted from the petition, "[t]hese charges could ruin the life of a truthful and honest young man." The trial court then commented, "That's the mother of this child saying that. I don't know how it could be anymore plain. . . . the Court finds the appropriate sentence to impose to hopefully not ruin completely the life of a truthful and honest young man will be 30 days in the Hickman County Jail, suspended to probation."

**Analysis**

*Full Probation*

Defendant argues in his first issue that the trial court erred by failing to grant him full probation. The State asserts that full probation is not warranted. We agree with the State.

When a defendant on appeal challenges the length of the sentence imposed by the trial court, the appellate court reviews this sentencing decision under an abuse of discretion standard of review with a presumption of reasonableness as to a within-range sentence when the appellate record reflects the trial court properly applied the purposes and principles of Tennessee's statutory sentencing procedures. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). Our supreme court held that the same standard of review applies to all sentencing decisions "related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012). The burden rests with the defendant to show that he is a suitable candidate for probation. T.C.A. § 40-35-303(b).

The purposes and principles of Tennessee's statutory sentencing procedures are generally set forth in T.C.A. §§ 40-35-102 and -103. As pertinent to the issues presented in the case *sub judice*, these provisions require that punishment should provide an effective general deterrent to those who violate the criminal laws of the state and encouragement of effective rehabilitation by promoting the use of alternative sentencing. T.C.A. § 40-35-102(3)(A) and (C). Also, each defendant should be punished by imposition of a sentence "justly deserved in relation to the seriousness of the offense." *Id*. at (1).

The trial court ordered that the three-year sentence be served by split confinement, which is probation following partial service in a jail or workhouse. T.C.A. § 40-35-306(a). The total sentence was set at thirty-six months, with thirty days, or approximately 2.8% of the sentence to be served by incarceration. The trial court specifically found that the seriousness of the offense justified confinement of thirty days in order to avoid depreciating the seriousness of the offense. T.C.A. § 40-35-103(1)(B). The trial court stated that it would have ordered 120 days to nine months of incarceration if not for the statements attributable to the victim's mother in the petition. Obviously, this indicated that the trial court had a significant belief that Defendant possessed considerable amenability to rehabilitation, even if not enough to grant full probation. The record reveals that the trial court made pertinent findings of fact to impose the sentence. The trial court's determination as to the length and manner of service of the sentence is entitled to a presumption of reasonableness under an abuse of discretion review. *Bise*, 380 S.W.3d at 707; *Caudle*, 388 S.W.3d at 279.

*Judicial Diversion*

Tennessee Code Annotated section 40-35-313 governs judicial diversion procedure. Upon a finding of guilt, the trial court may place a qualified defendant on probation without

entering a judgment of conviction. T.C.A. § 40-35-313(a)(1)(A) (2010). Once the defendant successfully completes probation, the charge will be dismissed. T.C.A. § 40-35-313(a)(2) (2010). Judicial diversion is similar to pretrial diversion; but judicial diversion follows a determination of guilt, and the judge, as opposed to the prosecutor, makes the decision whether to grant judicial diversion. *State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992). In this case Defendant is a statutorily defined "qualified defendant." *See* T.C.A. § 40-35-313(a)(1)(B)(I).

For a defendant to be eligible for judicial diversion, the record must reflect that the accused:

> (a) was convicted of a misdemeanor, which is punishable by imprisonment, or a Class C, D, or E felony, (b) has never been convicted of a felony or a Class A misdemeanor, and (c) consents to the deferment of the proceedings and the imposition of probation for up to the maximum length of punishment for the crime in question.

*State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). However, satisfying these criteria does not presumptively entitle a defendant to judicial diversion, but simply allows the trial court to grant diversion in appropriate cases. *Id*. The defendant bears the burden of proving that he or she is a suitable candidate for judicial diversion. *State v. Faith Renea Irwin Gibson*, No. E2007-01990-CCA-R3-CD, 2009 WL 1034770, at *4 (Tenn. Crim. App. Apr. 17, 2009) (citing *State v. Curry*, 988 S.W.2d 153, 157 (Tenn. 1999); *State v. Baxter*, 868 S.W.2d 679, 681 (Tenn. Crim. App. 1993)). In determining whether to grant judicial diversion to a qualified defendant, the trial court must consider the following factors:

> (a) the accused's amenability to correction; (b) the circumstances of the offense; (c) the accused's criminal record; (d) the accused's social history; (e)the accused's physical and mental health; (f) the deterrence value to the accused as well as others; and (g) whether judicial diversion will serve the interests of the public as well as the accused.

*State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *Parker*, 932 S.W.2d at 958. In addition to the *Electroplating* factors, the trial court may consider the following factors in making its decision: "[the defendant's] attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility[,] and attitude of law enforcement." *State v. Anthony Adinolfi*, No. E2013-01286-CCA-R3-CD, 2014 WL 2532335, at *2 (Tenn. Crim. App. June 2, 2014) (quoting *State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993))(internal quotation marks omitted). The record must reflect that the trial court

weighed all the *Electroplating* factors against each other, and the trial court must give an explanation of its ruling on the record. *State v. King*, 432 S.W.3d 316, 326 (Tenn. 2014); *Electroplating*, 990 S.W.2d at 229. When the record reflects that the trial court considered the *Electroplating* factors, identified which factors were relevant, and explained its ruling on the record, this Court must apply a presumption of reasonableness and review the judgment for an abuse of discretion. *King*, 432, S.W.3d at 319, 327. We will affirm the trial court's judgment "so long as there is any substantial evidence to support the trial court's decision." *Id*. at 327. However, if the trial court fails to consider and weigh the relevant factors, the presumption of reasonableness does not apply, and this Court may either conduct a *de novo* review or remand the issue for reconsideration. *Id*. at 327-28. In this case, the record shows that the trial court methodically considered and weighed each of the *Electroplating* factors, identified the factors weighing against granting judicial diversion, and explained the basis of its ruling on the record.

We have set forth in detail the trial court's findings of fact regarding whether to grant judicial diversion. The trial court considered all the *Electroplating* factors, identified the factors weighing against judicial diversion, and explained the basis of its ruling. There is substantial evidence in the record to support the trial court's decision, and applying a presumption of reasonableness, we affirm the decision to deny judicial diversion.

Accordingly, we conclude that Defendant is not entitled to relief in this appeal. The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE